Romina PEBENITO and Mary
Zulaybar, Plaintiffs,

v.

WERNER ENTERPRISES and James
A. Titus, Defendants.

No. 01–CV–2597(ILG).

United States District Court,
E.D. New York.

Aug. 22, 2002.

Thomas R. Craven, Jr., Taller & Wiz-
man, P.C., Forest Hills, NY, for plaintiffs.

David W. Brand, Brand & Brand, Gar-
den City, NY, for defendants.

## MEMORANDUM & ORDER

GLASSER, District Judge.

This car-accident case previously was
referred to arbitration. Plaintiffs' coun-
sel,[1] allegedly due to an inadvertent
scheduling conflict, failed to appear at the
arbitration hearing, and the arbitrator
subsequently ruled in favor of the defen-
dants. After the arbitrator's award was
entered on the docket, plaintiffs requested
a trial *de novo*. That request is presently
before the Court. Defendants object to
plaintiffs' request, and also seek the dis-
missal of this case (or the imposition of
sanctions) pursuant to Rule 37 of the Fed-
eral Rules of Civil Procedure, as a result
of various discovery abuses. For the rea-
sons that follow, plaintiffs' motion for a
trial *de novo* is denied. Defendants' mo-
tion to dismiss is accordingly denied as
moot.

## BACKGROUND

This case arises out of a car accident
that occurred on November 22, 2000, at
the intersection of Yellowstone Boulevard
and Queens Boulevard in Queens. At the
time of the accident, defendant Titus was

---

1. Plaintiffs are represented by the law firm of
Taller & Wizman, P.C. At least four different
attorneys from that firm—including Thomas
R. Craven, Jr., David Taller, Regis Gallet, and
Norman Colon—have worked on this case.

For simplicity of reference, the Court refers to
Taller & Wizman and each of its associated
attorneys as "plaintiffs' counsel," and uses the
pronouns "he" and "him" in discussing coun-
sel's actions.

driving a tractor-trailer owned by defendant Werner Enterprises. The tractor-trailer, while attempting to make a left turn, struck the left rear portion of plaintiffs' car. Plaintiffs commenced this action on March 29, 2001, in New York Supreme Court, Queens County, seeking $4 million in damages as a result of the accident. Defendants removed the action to this Court, asserting diversity jurisdiction, on April 25, 2001.

On August 13, 2001, Magistrate Judge Levy held an initial conference in the case. Plaintiffs' counsel, however, failed to notify defense counsel of the conference, and thus defense counsel did not appear. Magistrate Judge Levy therefore scheduled another conference for October 4, 2001. At that conference, which was conducted by telephone, plaintiffs allegedly made a settlement demand of $150,000. (*See* Leder Aff. ¶ 6.) Defendants informed plaintiffs that it was premature for them to respond to plaintiffs' offer, because they had not yet taken any discovery. Defendants also requested that plaintiffs provide them with authorizations for the release of medical records and employment records.[2] Magistrate Judge Levy then set February 8, 2002, as the discovery cut-off date, ordered the case to arbitration, and ordered that the arbitration hearing be held after a settlement conference, which he scheduled for February 26, 2002. Magistrate Judge Levy also asked defendants to inform plaintiffs whether they would concede liability for the accident.

Discovery then commenced, and on October 11, 2001, defendants served plaintiffs with interrogatories, requests for the production of documents (including requests for authorizations for the release of medical and employment records), deposition notices, and a demand for expert disclosures. (*See id.* Ex. F.) On November 1, 2001, in accordance with Magistrate Judge Levy's request, defendants wrote plaintiffs and informed them that they were conceding liability, thereby rendering this case "damages only." (*See id.* Ex. E.) At that same time, defendants renewed their request for authorizations for medical and employment records. (*See id.*)

Several months passed, and plaintiffs apparently failed to respond to any of defendants' discovery requests. The discovery cut-off then passed. On February 26, 2002, Magistrate Judge Levy held the previously scheduled settlement conference. Plaintiffs' counsel, however, failed to appear.[3] Magistrate Judge Levy then rescheduled the settlement conference for that afternoon, to take place by telephone. Plaintiffs' counsel, however, then failed to appear for the telephone conference, so Magistrate Judge Levy adjourned the conference to the following day.

When the conference finally took place, on February 27, 2002, defendants evidently alerted Magistrate Judge Levy to plaintiffs' failure to respond to defendants' discovery requests. Defendants then asked Magistrate Judge Levy to order plaintiffs to provide authorizations for the release of medical and employment records. (*See* Leder Aff. ¶ 12.) Plaintiffs' counsel objected to the production of employment records, asserting that they were irrelevant because plaintiffs were not seeking damages for lost wages. (*See id.*) In addition, plaintiffs' counsel, asserting a need to review the case file, asked Magis-

---

**2.** Defendants assert that Magistrate Judge Levy ordered plaintiffs to provide the authorizations (*see* Leder Aff. ¶ 6), but Magistrate Judge Levy's minute entry does not indicate that he issued such an Order.

**3.** Plaintiffs' counsel apparently informed defense counsel, but not Magistrate Judge Levy, that he would be late for the conference.

trate Judge Levy to postpone ruling on the issue for another 24 hours. Magistrate Judge Levy granted this request.

Accordingly, Magistrate Judge Levy held another telephone conference on February 28, 2002. At that time, Magistrate Judge Levy rejected plaintiffs' argument regarding the relevance of the employment records, and ordered that the authorizations be provided.[4] He also required plaintiffs to provide authorizations for medical records within 21 days. Plaintiffs did not appeal Magistrate Judge Levy's Order. See 28 U.S.C. § 636(b)(1)(A) (permitting appeals of Magistrate Judge decisions on pre-trial orders which are clearly erroneous or contrary to law).

On March 20, 2002, plaintiffs' counsel wrote defense counsel, and enclosed authorizations for the release of plaintiffs' medical records. However, in his letter, plaintiffs' counsel stated that, "upon further review of our file[,] we show no record of any lost wages claim and therefore we are not enclosing authorizations for employment records." (Leder Aff. Ex. G.) Thus, despite being ordered to produce the employment record authorizations, plaintiffs' counsel refused to turn over those authorizations, based on an argument previously rejected by Magistrate Judge Levy. After receiving this letter, defense counsel called plaintiffs' counsel, and informed him that Magistrate Judge Levy had rejected this purported justification for refusing to provide the employment authorizations; he then demanded that the authorizations be

provided. Plaintiffs' counsel advised defense counsel that the authorizations, along with all other outstanding discovery (including responses to interrogatories and expert disclosures), would be produced shortly. (See id. ¶ 17.) Plaintiffs' counsel, however, failed to provide the authorizations for employment records, or the other outstanding discovery.

In the meantime, an arbitration hearing was scheduled for April 2, 2002. According to plaintiffs' counsel, he placed several phone calls to the arbitrator the week before the arbitration hearing was scheduled, seeking to adjourn the arbitration, which was scheduled during Passover. Counsel avers that he was unable to reach the arbitrator until the day before the arbitration and, when he finally did reach her, the arbitrator indicated that she did not have a problem with the request, but that she was unsure whether she had the authority to grant an adjournment.[5] The arbitrator informed plaintiffs' counsel that she would get back to him. However, because plaintiffs' counsel was already headed out of town by the time he reached the arbitrator, he was not around when the arbitrator denied the request for an adjournment later that day. Thus, he failed to appear the following day at the arbitration. The arbitrator then issued an award in favor of the defendants, noting:

> No evidence was produced by plaintiff [sic] to establish claim of serious injury.[6] Plaintiff [sic] did not provide medi-

---

4. The records were to be delivered to plaintiffs' counsel, who, within seven days of receipt, was required either to produce the records or object to their production and present them to Magistrate Judge Levy for an *in camera* inspection.

5. It is unclear to the Court why the arbitrator might not have been able to grant an adjournment. At oral argument, defense counsel suggested that the arbitrator could not grant an

adjournment because neither party had requested an extension of the discovery cut-off. However, the arbitrator previously granted an adjournment from March 7, 2002 to April 2, 2002 (see Leder Aff. ¶ 14), and both of these dates fell after the discovery deadline.

6. A claim of negligence in the operation of an automobile will be barred under New York's no-fault law unless a plaintiff can prove that he or she was "seriously injured" as a result

cal or employment records in advance of arbitration hearing to arbitrator, and did not appear at scheduled hearing after plaintiff's [*sic*] request for adjournment was denied by arbitrator on April 1, 2002.

(Request for Trial *De Novo*, Ex. A.)

Based on this award, the Clerk of the Court appears to have issued a judgment in favor of defendants and· entered that judgment on the docket, even though plaintiffs timely submitted a request for a trial *de novo*, pursuant to Local Rule 83.10(h)(1).[7] In the request for a trial *de novo*, plaintiffs' counsel asserted that, due to the inadvertent scheduling of the arbitration hearing during Passover, he was unable to appear at the hearing; thus, "despite ... Plaintiffs' request to adjourn, the matter was decided in favor of the Defendant(s) on default." (Request for Trial *De Novo*, ¶ 4.) Defendants submitted no opposition to plaintiffs' request.

The Court heard oral argument on plaintiffs' request on May 31, 2002. At that time, defense counsel called the Court's attention to the discovery issues discussed above. Accordingly, defense counsel urged the Court to reject plaintiffs' request for a trial *de novo*. Because defense counsel failed to submit papers in opposition to plaintiffs' request, however, the Court was unaware of any of these discovery abuses. Thus, the Court directed defense counsel to submit papers on the issue within two weeks. Counsel complied, and in his papers argued that, under

Rule 37 of the Federal Rules of Civil Procedure, plaintiffs' case should be dismissed, or, in the alternative, plaintiffs should be sanctioned for failing to obey Magistrate Judge Levy's February 28, 2002 Order. Plaintiffs' counsel submitted an affidavit in reply, in which he argues that the discovery issues raised by defense counsel have no bearing on the request for a trial *de novo*, and should have been raised in a motion to compel discovery. Plaintiffs' counsel also argues that, in any event, he has finally provided authorizations for the release of plaintiffs' employment records to defense counsel, and that this discovery issue is now resolved.

## DISCUSSION

Pursuant to authority granted to the district courts by 28 U.S.C. § 651(a), the Eastern District of New York has enacted Local Rules governing arbitrations. A request for a trial *de novo* after an arbitration award has been entered is governed by Local Rule 83.10(h). That Rule states, in pertinent part:

(1) Within 30 days after the arbitration award is entered on the docket, any party may demand in writing a trial *de novo* in the district court. Such demand shall be filed with the arbitration clerk, and served by the moving party upon all counsel of record or other parties....

(2) Upon demand for a trial *de novo* ..., the action *shall* be placed on the calendar of the court and treated for all

---

of the accident. *See* N.Y. Ins. § 5104(a). A "serious injury" is one that results in "death; dismemberment; significant disfigurement; a fracture; ...; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the materials acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of

the injury or impairment." N.Y. Ins. § 5102(d).

7. There is no evidence, however, that plaintiffs complied with Local Rule 83.10(h)(4), requiring them to deposit with the Clerk of the Court an amount equal to the arbitration fees of the arbitrator, *viz.*, $250. *See* Local Rule 83.10(b).

purposes as if it had not been referred to arbitration, and any right of trial by jury that a party would otherwise have shall be preserved inviolate.

(emphasis added); *see also* 28 U.S.C. § 657(c)(1). The mandatory language in Rule 83.10(h)(2) suggests that the Court has no discretion to deny a request for a trial *de novo;* simply filing such a request would appear to restore a case to the Court's docket automatically. However, Local Rule 83.10(f)(3) vests some discretion in a district court to deny a request for a trial *de novo.* Rule 83.10(f)(3) states, in pertinent part, that "[i]n the event . . . that a party fails to participate in the arbitration process in a meaningful manner, the Court may impose appropriate sanctions, including, but no[t] limited to, the striking of any demand for a trial *de novo* filed by that party."

Not surprisingly, given the less-than-exemplary lawyering that has occurred in this case, neither party has discussed the applicability of Rules 83.10(f) and (h). However, while defendants have not invoked Rule 83.10(f)(3) in opposition to the plaintiffs' request, it is clear that some of the relief they are seeking—namely, the denial of plaintiffs' request for a trial *de novo*—is provided for by that Rule.[8] Accordingly, the Court must analyze whether plaintiffs have "failed to participate in the arbitration process in a meaningful manner."

There is a dearth of case law applying Local Rule 83.10(f)(3). However, this Court previously had occasion to discuss the applicability of the Rule in *Myers v. Wiederhol,* 185 F.R.D. 149 (E.D.N.Y.1999). There, the plaintiffs were involved in a car accident with a United States Postal Service mail truck. The lawsuit was referred

to arbitration, and an arbitration hearing was scheduled for September 17, 1998. Although counsel for each of the plaintiffs appeared at the hearing, neither of the plaintiffs appeared; one of the plaintiffs claimed she never received notice of the arbitration hearing, while the other provided no explanation for his absence. Furthermore, counsel for one of the plaintiffs delivered documents to defense counsel on the date of the hearing, in contravention of Local Rule 83.10(f)(5) (requiring documents to be furnished 10 days prior to the hearing). Accordingly, the arbitrator adjourned the hearing to October 21, 1998. *See id.* at 150.

At the second hearing, one of the plaintiffs again failed to appear, and once more claimed that she did not receive notice of the hearing. Counsel for this plaintiff did appear; however, he offered no documents or witnesses in support of his client's claim. The other plaintiff also appeared, with counsel. Yet counsel for this plaintiff informed the arbitrator that he did not intend to call any witnesses, and only called his client as a witness after being urged to do so by the arbitrator. Counsel also stated that he did not intend to offer any documentary evidence, and offered some documents only after being prodded by the arbitrator; most of the documents were excluded by the arbitrator as hearsay. *See id.* at 151.

After the hearing, the arbitrator found in favor of the defendants. Once the arbitrator's award was entered on the docket, the plaintiffs timely filed a request for a trial *de novo.* The government then moved to strike the request under Rule 83.10(f)(3), arguing that the plaintiffs had failed to meaningfully participate in the

8. Plaintiffs' argument that "Defendants' response to Plaintiffs' Request for Trial–De–Novo . . . is *not* the proper forum" in which to raise plaintiffs' discovery abuses (*see* Gallet Reply Aff. ¶ 7) therefore is incorrect.

arbitration. The Court denied the government's motion. The Court first recognized that "striking a demand for a trial *de novo* may be appropriate when a party demonstrates ... utter disregard of the arbitration process." *Id.* at 151. Nevertheless, while noting that the plaintiffs' participation was "perfunctory," "superficial," and "disdainful," the Court denied the government's motion because it was "reluctant to deprive plaintiffs of their day in court." *Id.* Instead, in accordance with Rule 83.10(f)(3), the Court sanctioned the plaintiffs, requiring them to pay for the costs of the arbitration. *Id.* at 152.

The facts of this case are more egregious than in *Myers.* First, unlike in *Myers,* plaintiffs' counsel flatly *refused* to turn over certain documents. Moreover, this refusal was based on an objection raised before Magistrate Judge Levy, and which was rejected. Plaintiffs could have appealed Magistrate Judge Levy's Order, but chose not to, opting instead to flout Magistrate Judge Levy's ruling. Indeed, the fact that plaintiffs provided the authorizations in response to defendants' opposition/Rule 37 motion suggests that plaintiffs were well aware there was no basis for refusing to provide those documents.

In addition, plaintiffs failed to appear at the arbitration hearing. While it is true that the hearing was scheduled during the Passover holiday, plaintiffs' counsel was aware of this conflict well in advance of the hearing. Plaintiffs' counsel made no arrangements for someone else from the firm of Taller & Wizman to be present at the arbitration, despite the fact that at least four lawyers from the firm have been involved in this case. Moreover, plaintiffs' counsel admitted at oral argument that the arbitrator informed him that she was unsure whether she had the authority to grant an adjournment. (*See* Transcript of May 31, 2002 Hearing Before Hon. I. Leo Glasser, at 2 ("I explained the information on the morning of the 1st, the day before the arbitration. She advised she didn't have a problem with it, *she would have to let me know whether we would be able to reschedule the arbitration* and I indicated to her I was already on my way out.") (emphasis added).) Nevertheless, counsel decided not to appear (and did not arrange for someone else from the firm to appear), thereby assuming the risk that the request for an adjournment would be denied. Finally, plaintiffs also appear to have failed to respond to defendants' interrogatories and other discovery requests (*e.g.,* expert disclosures).

These facts lead the Court to conclude that plaintiffs have not "meaningfully participated" in the arbitration process, and instead have demonstrated an "utter disregard" of that process. The discovery sought by defendants is directly relevant to their defense that plaintiffs did not suffer any "serious injury," which would scuttle plaintiffs' claims. Defendants impeded this discovery by refusing to provide authorizations for the release of plaintiffs' employment records, as well as the other discovery sought by defendants, even though they had been ordered to do so by Magistrate Judge Levy. Furthermore, plaintiffs failed to appear at the arbitration hearing, despite knowing that the arbitrator might not grant their eleventh-hour request for an adjournment. Plaintiffs' participation simply cannot be labeled "meaningful."

Moreover, the Court notes that plaintiffs' argument in support of their request for a trial *de novo* misstates the facts. Plaintiffs assert that "the matter was decided in favor of the Defendant(s) on default." (Request for Trial *De Novo,* ¶ 4.) The arbitrator, however, did not base her decision *solely* on plaintiffs' failure to appear. Instead, the arbitration award spe-

cifically noted that plaintiffs failed to produce medical or employment records to the arbitrator *in advance* of the arbitration hearing. (*See id.* Ex. A.) Thus, plaintiffs' suggestion that the arbitrator ruled against them solely because they were *in absentia* is disingenuous.

Finally, even if the Court granted plaintiffs' request for a trial *de novo*, it likely would refuse to allow plaintiffs to introduce evidence refuting defendants' affirmative defense that plaintiffs did not suffer "serious injuries," due to their failure to comply with Magistrate Judge Levy's Order. The Court has such authority pursuant to the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 37(b)(2)(B) (permitting a court to "refus[e] to allow [a] disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence"). In doing so, plaintiffs' claims would have been subject to dismissal on summary judgment, pursuant to New York Insurance Law § 5104. Thus, the end result is the same whether the Court grants the request for a trial *de novo* or denies it: plaintiffs should take nothing of defendants.

### CONCLUSION

For the foregoing reasons, plaintiff's request for a trial *de novo* is denied. Defendants' motion to dismiss, or in the alternative for sanctions, is accordingly denied as moot. The judgment entered by the Clerk of the Court pursuant to the arbitration award should remain in full force and effect.

SO ORDERED.